LAW OFFICES OF

# COWDERY, ECKER & MURPHY, L.L.C.

750 MAIN STREET

HARTFORD, CONNECTICUT 06103-2703

www.cemlaw.com

RECEIVED 2006 FEB -9 P 2:08

JAMES T. COWDERY
STEVEN D. ECKER
THOMAS J. MURPHY
PETER M. HABERLANDT
GEORGE C. JEPSEN, OF COUNSEL

TELEPHONE (860) 278-5555
FACSIMILE (860) 249-0012

WRITER'S E-MAIL:
tmurphy@cemlaw.com

February 9, 2006

**BY HAND**

The Honorable Janet C. Hall
United States District Judge
United States District Court for the
   District of Connecticut
915 Lafayette Boulevard
Bridgeport, Connecticut 06604

   Re:   United States v. Arthur L. Schwartz
         Docket No. 3:06CR00002(JCH)

Dear Judge Hall:

   We are writing in connection with the sentencing in the above-referenced matter scheduled for March 23, 2006. On January 4, 2006, Arthur L. Schwartz ("Schwartz") pled guilty to two counts of violating 18 U.S.C. § 1001. Our clients, George and Eva Landegger (the "Landeggers"), were the victims of Schwartz's criminal activity, and they now seek restitution pursuant to 18 U.S.C. § 3663A or, alternatively, 18 U.S.C. § 3663.

I.   **Introduction**

   The first count to which Schwartz pled guilty arose from a number of false statements that Schwartz made to revenue agents and officers of the Internal Revenue Service ("IRS") in connection with the Landeggers' Federal income tax returns for the years 1996 through 1999.[1] In particular, Schwartz, a tax lawyer who was the Landeggers' tax preparer and advisor, repeatedly lied to the IRS, claiming that the Landeggers' tax returns for the years 1996 through

---

[1] The second count to which Schwartz pled guilty arose from false statements that he made to agents and officers of the IRS in connection with his own taxes. The Landeggers were victims of Count I and seek restitution arising from Count I; they do not contend that they are entitled to restitution in connection with Count II.

COWDERY, ECKER & MURPHY, L.L.C.

The Honorable Janet C. Hall
February 9, 2006
Page 2

1999 had been filed when he knew that this was false. During the hearing at which Schwartz pled guilty, the Government told the Court that if the case were to proceed to trial, the Government would prove the following: Schwartz was the Chief Operating Officer of Parsons & Whittemore, Incorporated ("P&W"), a privately owned company controlled by the Landegger family; he was responsible for overseeing P&W's financial activities and reported to Mr. Landegger, the Chief Executive Officer; he held a power of attorney authorizing him to represent the Landeggers in communications with IRS representatives who were examining the Landeggers' tax returns; several times during 1999, in the course of a civil audit of P&W, a revenue agent asked Schwartz for copies of the Landeggers' tax returns for 1995 through 1997; despite these repeated requests, Schwartz failed to produce the tax returns and stated falsely that the returns had been filed; and from April 2000 to January 2001, Schwartz falsely represented to a revenue officer and the collection division that the Landeggers' tax returns for the years 1996 through 1999 had been prepared and filed when he knew that they had not been filed. *See* Transcript of Schwartz's January 4, 2006 Guilty Plea ("Tr.") at 38-41. Schwartz acknowledged the truth of the facts the Government stated it would prove at trial.[2] *See id.* at 42.

This conduct was not an aberration for an otherwise upstanding citizen. To the contrary, it was part of a pattern of behavior that began years earlier and involved a pyramid of lies and deception. As outlined more fully below, for years, Schwartz was entrusted to prepare and file the Landeggers' tax returns, yet he repeatedly failed to do so despite assurances to the Landeggers that their returns had been timely filed. Unbeknownst to the Landeggers, Schwartz's preparation and submission of the Landeggers' tax returns were always a number of years behind, and thus he used a kiting scheme, routinely applying funds to prior tax years that the Landeggers believed were being submitted for the current tax year. Given Schwartz's pattern of behavior and misconduct, it is not surprising that the taxing authorities eventually began to investigate the Landeggers and request copies of their returns. In an effort to maintain his scheme and hide his misconduct, Schwartz lied to representatives of the IRS, claiming that the Landeggers had filed their returns for certain years when he knew that this claim was false because he had failed to file them. It is these lies that were the basis for Schwartz's guilty plea as to Count I and for which the Landeggers seek restitution.

As a result of the lies that Schwartz told the IRS agents and officers, the Landeggers incurred significant tax penalties and enormous interest, as well as potentially millions of dollars of additional penalties and interest asserted by the IRS for the same years. Moreover, the Department of Justice and the IRS undertook a three-year criminal investigation of Mr. Landegger. The Landeggers were forced to retain attorneys and forensic accountants, at significant expense, to represent them before the Government agencies and to sift through the chaos that Schwartz caused with respect to their tax filings and payments. All of the losses for

---

[2] Schwartz also acknowledged that in sentencing him, the Court will consider "any victim of [his] offense." Tr. at 33.

COWDERY, ECKER & MURPHY, L.L.C.

The Honorable Janet C. Hall
February 9, 2006
Page 3

which the Landeggers seek restitution in this proceeding resulted directly from the misconduct to which Schwartz pled guilty.[3]

The purpose of this letter is to set forth the facts that gave rise to Schwartz's guilty plea and the Landeggers' claim for restitution, describe the losses that the Landeggers incurred as victims of Schwartz's crime, and identify the legal authority that supports an order of restitution in favor of the Landeggers.

## II.     Factual Background

Schwartz has a law degree and masters in taxation from New York University and experience as a tax attorney with the U.S. Treasury Department and the New York City Tax Department. Before joining P&W, he worked at the prestigious New York tax firm of Roberts & Holland and held himself out as an expert in taxation.

### A.     Schwartz's Relationship with the Landeggers

In 1976, Schwartz joined P&W as tax counsel and over time, his relationship with the

---

[3] In addition to serving as the Landeggers' tax preparer and attorney, Schwartz served as President and Chief Operating Officer of Parsons & Whittemore Enterprises Corp. ("PWE"), a closely held corporation whose shares are owned by the Landegger family. PWE is the corporate parent of P&W. In his role as President and Chief Operating Officer of P&W and PWE, Schwartz engaged in widespread misconduct. The Landeggers, P&W, and PWE, filed a separate civil action against Schwartz in the United States District Court for the Southern District of New York. A copy of the Amended Complaint in the civil litigation is available upon request. Last year, following Schwartz's assertion of his Fifth Amendment privilege in response to the Amended Complaint, the United States District Court for the Southern District of New York awarded summary judgment to P&W in the civil litigation. In an Opinion & Order dated September 6, 2005, the court concluded that there were no disputed issues of material fact and that as a matter of law, Schwartz had breached his fiduciary duties and the duty of good faith he owed to P&W, breached his employment contract with P&W, engaged in conversion of corporate assets, and is liable to P&W for unjust enrichment and money had and received. *See Parsons & Whittemore Enters. Corp. v. Schwartz*, 387 F. Supp. 2d 368 (S.D.N.Y. 2005). The instant claim for restitution does not cover the same conduct set forth in the Amended Complaint, but rather relates only to losses directly and proximately caused by the criminal conduct to which Schwartz pled guilty in Count I vis-à-vis the Landeggers. P&W is not seeking restitution in this criminal proceeding because, unlike the Landeggers, the corporation is not a direct victim of Count I as defined by 18 U.S.C. §§ 3663(a)(2) and 3663A(a)(2).

Landeggers expanded to include the preparation and filing of the Landeggers' joint tax returns.[4] Schwartz gained the Landeggers' complete trust, which led to expanding responsibilities with respect to the Landeggers' personal and business finances. Given their knowledge of Schwartz's professional background, their belief that this background made him highly qualified to serve as their tax representative, and their longstanding relationship with him, the Landeggers entrusted Schwartz with their most significant private and professional affairs. As compensation for his services to P&W, Schwartz received salary, deferred compensation, and bonuses totaling in excess of $7 million for the years 1995 through 1999.

In December 2001, George Landegger learned from Arthur Schwartz that Mr. Landegger was under criminal investigation by the IRS regarding his tax liability for the years 1995 to 1999. George Landegger immediately retained outside counsel and his counsel, in turn, retained Leon M. Reimer & Co., P.C. ("Reimer"), a forensic accounting firm, to review the Landeggers' tax liability for the period 1995 through 1999.

In the ensuing months, Mr. Landegger's counsel and Reimer undertook a massive investigation into the events and circumstances surrounding the filing of the Landeggers' income tax returns. That investigation revealed that although Schwartz assumed responsibility for preparing and filing the Landeggers' income tax returns for the period 1995 through 1999, for a number of years he failed to prepare and timely file their returns despite repeated assurances to both representatives of the IRS and the Landeggers that he had done so. To cover up his wrongdoing, Schwartz misapplied corporate money to pay taxes, penalties, and interest assessed against the Landeggers and misappropriated money belonging to the Landeggers. As a result of his conduct, Schwartz was fired by Mr. Landegger in April, 2002.

Schwartz's motive for concealing and covering up by scheme his misconduct was his desire to maintain his position at P&W and his lucrative annual compensation which averaged more than $1 million, and to conceal his long running criminal behavior with respect to the Landeggers' tax affairs, which included his efforts to conceal his failure to accomplish that which he had undertaken to do. Thus, his misconduct was willful and intentional.

---

[4] In the 1980s, Schwartz was promoted to President and Chief Operating Officer of P&W, and also became Mr. Landegger's primary personal investment advisor and principal legal advisor. Mr. Landegger's will named Schwartz as the co-executor of his estate, the trustee of the Landeggers' trusts, and the successor guardian of the Landeggers' minor children.

### B. Schwartz's Misconduct With Respect to the Landeggers' Federal Returns[5]

The investigation undertaken by the Government, the Landeggers, their counsel, and Reimer revealed, among other things, that for tax years 1995 through 1999, Schwartz repeatedly failed to file timely the Landeggers' federal tax returns. This malfeasance was a continuation of a course of conduct extending over many years, pursuant to which Schwartz repeatedly delayed filing the Landeggers' tax returns, routinely waited for assessments to be made, and then met with the IRS pursuant to a power of attorney given to him by the Landeggers. In this capacity, and without informing the Landeggers, he accepted the IRS's assertion of various taxes, penalties, and interest liabilities against the Landeggers. Schwartz also improperly and without authorization or the Landeggers' knowledge used P&W's funds to pay the Landeggers' taxes, interest and penalty assessments caused by Schwartz's malfeasance. He also solicited Mr. Landegger to issue personal checks by misrepresenting that they would be used for current year estimated tax liabilities, when in fact Schwartz used them to pay prior arrearages, penalties (including fraud penalties), and interest that he caused the Landeggers' to incur through his willful misconduct.

#### 1. Conduct That Gave Rise to Schwartz's False Statements

In early 1999, Mr. Landegger received a large dividend and asked Schwartz what taxes were due on it. Schwartz advised him to make an "estimated tax" payment of $5 million to the IRS for that tax year, <u>1999</u>. Schwartz then submitted Mr. Landegger's $5 million check with a <u>1998</u> tax extension form, and these funds were applied to the 1998 tax year rather than the 1999 tax year, despite the fact that Mr. Landegger gave the check to Schwartz with the expectation that it would be properly applied to 1999. Because taxes were regularly withheld from Mr. Landegger's salary and paid to the Government for the tax year <u>1998</u>, the balance of the Landeggers' true final tax liability for 1998 was virtually non-existent. Thus, the IRS notified them that they were due a refund of $4,997,768 for 1998. When Mr. Landegger questioned Schwartz about the refund notice, Schwartz told the Landeggers that this refund was erroneous; they never received the money. Moreover, the $5 million "estimated tax" payment never appeared on either the 1998 or the 1999 tax returns or any other return that Schwartz ultimately prepared and filed in 2001.

Similarly, in early 2000, in an effort to conceal his past misconduct, Schwartz misdirected a $4.144 million estimated tax payment for the year 1999. This misdirection occurred after Mr. Landegger, Schwartz, and another P&W attorney sought assistance from an outside tax attorney concerning the tax consequences of proceeds that Mr. Landegger received in

---

[5] Schwartz also engaged in misconduct with respect to the Landeggers' state income tax returns. However, because those damages are only indirectly related to the conduct to which Schwartz pled guilty, the Landeggers are not seeking to recover those losses from Schwartz in this proceeding.

connection with the sale of an entity in 1999. The outside tax attorney advised Mr. Landegger and Schwartz that Mr. Landegger should make an estimated tax payment in the amount of $4.144 million, which the tax lawyer computed, for the year 1999 in connection with the sale of the entity. Schwartz confirmed the correctness of that advice, and then provided handwritten instructions to Mr. Landegger's administrative assistant requesting that a check in the amount of $4.144 million be given to him. Schwartz did not provide instructions to Mr. Landegger or his assistant regarding how the check should be annotated for the relevant year.

Thereafter, Mr. Landegger issued a check to the IRS in the amount of $4.144 million as an estimated payment of his 1999 tax liability and turned the check over to Schwartz for submission to the IRS, believing that Schwartz would designate the check to be applied to tax year 1999. Contrary to Mr. Landegger's understanding and the outside tax attorney's advice, Schwartz caused $3.8 million of the $4.144 million to be diverted for the payment of taxes, penalties, and interest for prior tax years. The Landeggers were wholly unaware of even the existence of the tax liabilities to which the $3.8 million payment was directed because Schwartz never informed the Landeggers that they had incurred such liabilities as a result of his failure to accurately prepare and timely file their returns for earlier years.[6]

## 2. Schwartz's False Statements From 1999 to 2001

In addition to lying to the Landeggers about their tax returns, dividends, and refunds, Schwartz has now admitted that he also lied repeatedly to IRS examiners. These lies are the basis for the first count to which Schwartz pled guilty. Specifically, between 1999 and 2001, Schwartz misrepresented to IRS agents and examiners that the Landeggers' tax returns for the years 1995 through 1999 had been filed when he knew that no tax returns had been filed for those years.

For example, Schwartz misrepresented to IRS examiner John Dubiansky that the Landeggers' tax returns for 1996 and 1997 had been filed when, in fact, he had failed to file them. Mr. Dubiansky reflected Schwartz's misrepresentations in a memorandum to Schwartz, dated February 10, 2000, in which he complained that Schwartz had given him the runaround on his request for copies of the 1996 and 1997 returns:

> You have on several occasions verbally told me that the 1996 and 1997 returns were prepared and filed, each time telling me that you would have copies of them for me shortly. It has now been over 10 months since

---

[6] It is worth noting that for the period 1995 through 1999, if all of the Landeggers' returns had been timely filed, income had been properly reported, and withholdings and estimated income tax payments had been properly applied, the Landeggers would have overpaid their total tax liabilities by hundreds of thousands of dollars.

COWDERY, ECKER & MURPHY, L.L.C.

The Honorable Janet C. Hall
February 9, 2006
Page 7

> copies of these returns were first requested, and they still have not been provided to me. . . . I believe that it is absolutely ridiculous to keep promising me something for months that would take five minutes to copy if you have them in your possession. . . . [I]f better cooperation is not received from you in the future in responding to the examination requests for documents and or information, *consideration will be given to by-passing you as Power of Attorney, in accordance with existing Internal Revenue Service procedures.*

2/10/00 Memo from Dubiansky to Schwartz[7] (emphasis added); *see also* Criminal Information. This threat by IRS Examiner Dubiansky represented a significant risk to Schwartz because if IRS representatives had spoken directly to the Landeggers, Schwartz's scheme would have been exposed.

Similarly, and as Schwartz has admitted, in 1999 he failed to respond to IRS requests for copies of the Landeggers' tax returns for the years 1995 through 1997 and stated that the returns had been filed when he knew that this was false. *See* Stipulation of Offense Conduct ¶ 10. And from April 2000 to January 2001, Schwartz falsely represented to Revenue Officers that the Landeggers' tax returns for the years 1996 through 1999 had been prepared and filed when he knew that no such returns had been prepared or filed.[8] *See id.* ¶ 12.

---

[7] This memo will be provided to the Court upon request.

[8] In addition to lying about whether the Landeggers' returns had been prepared and filed for the years 1995 through 1999, Schwartz also told various other lies to representatives of the IRS. For example, Schwartz misrepresented to IRS agent Joel Pupps that the Landeggers would sign an agreement accepting certain proposed federal income tax adjustments. In a letter to Schwartz, Mr. Pupps expressed his frustration with Schwartz's failure to obtain the Landeggers' signatures on the agreement:

> As you know, we issued to you and discussed all adjustments in the Revenue Agents Report over six months ago. At that time and on numerous occasions subsequent you have stated that the agreement to our findings would be signed, and that you had no disagreements with any of the proposed adjustments. Since the agreement has not been forthcoming, we cannot hold up processing of this case any longer.

3/9/99 Letter from Pupps to Schwartz (available upon request); *see also* Criminal Information ¶ 5.

COWDERY, ECKER & MURPHY, L.L.C.

The Honorable Janet C. Hall
February 9, 2006
Page 8

Of course, until Reimer's and counsel's investigation in 2002 and the Government's investigation that ultimately gave rise to Schwartz's guilty plea, the Landeggers believed, based on Schwartz's assurances, that their tax returns for the years 1995 through 1999 had been filed timely. They had no knowledge of the lies that Schwartz was telling IRS examiners and agents regarding their tax returns.

### III. Calculation of Losses

As a result of Schwartz's misconduct, the Landeggers have incurred losses directly and proximately caused by the charges to which Schwartz pled guilty. These losses include penalties and interest assessed against them by the IRS and professional fees.

Specifically, for the year 1999, had Schwartz not improperly diverted over nine million dollars of estimated tax payments (the $5 million and $4.144 million estimated tax payments), the Landeggers would not be liable for any interest or penalties for 1999. This diversion of the $9.144 million is the very reason that Schwartz lied to representatives of the IRS throughout 2000 and January 2001: he deliberately did not file the 1999 tax returns because he had diverted the bulk of the $9.144 million in estimated tax payments for that year to prior years. Had he timely filed the 1999 returns, his kiting scheme would have been revealed because there would have been insufficient estimated payments to satisfy the 1999 tax obligations in full, and Mr. Landegger's belief that more than $9 million in estimated payments had been made for the 1999 tax year would have prevented Schwartz from requesting additional funds from Mr. Landegger for the 1999 tax year. Schwartz therefore lied to the IRS in 2000 and 2001, claiming that the 1999 returns had been filed when he knew that this was false. These lies were intended to conceal and cover up by scheme Schwartz's misconduct with respect to the Landeggers' 1999 taxes. As a result of this misconduct, the Landeggers suffered losses in the amount of $1,467,578 in assessed and paid interest for the year 1999.

Additionally, the lies that Schwartz told the IRS agents in 1999 related to the Landeggers' taxes for the years 1995 through 1997. As a result of Schwartz's failure to file timely the Landeggers' tax returns for those years, and his lies to the IRS claiming that the returns had been filed, the Landeggers incurred losses in assessed and paid interest and penalties in the amount of $193,700. Thus, the total amount that the Landeggers have paid to the IRS to

COWDERY, ECKER & MURPHY, L.L.C.

The Honorable Janet C. Hall
February 9, 2006
Page 9

date that is directly and proximately attributed to the lies Schwartz told between 1999 and 2001 is $1,661,278.[9]

Moreover, the IRS is seeking to impose additional penalties and interest on the Landeggers, all of which flow directly and proximately from Schwartz's misconduct. The Landeggers are currently protesting the imposition of these additional penalties and interest. Following a lengthy audit, a revenue agent issued a proposed assessment and notice of deficiency and the Landeggers have filed a formal protest and appeal. If the Landeggers are not successful in contesting these additional penalties and penalty interest, they will suffer an additional $3,301,599 in losses as a direct result of Schwartz's actions. These damages are summarized as follows:

Penalties and penalty interest assessed by IRS for 1995 to 1999 currently under appeal, accrued to January 15, 2006:

|      | Penalty      | Penalty Interest | Total       |
|------|--------------|------------------|-------------|
| 1995 | $ 43,575     | $ 27,381         | $ 70,956    |
| 1996 | 98,155       | 54,955           | 153,110     |
| 1997 | 107,746      | 52,657           | 160,403     |
| 1998 | 28,952       | 15,880           | 44,832      |
| 1999 | 2,180,325    | 691,973          | 2,872,298   |
|      | $2,458,753   | $ 842,846        | 3,301,599   |

Finally, as described above, as a result of Schwartz's criminal conduct the Landeggers were forced to hire attorneys and forensic accountants to investigate Schwartz's actions, sort through their erroneous tax returns, repair the damage that Schwartz inflicted on their finances

---

[9] Penalties and interest charged by the IRS and paid by the Landeggers:

|      | Penalties  | Interest    | Total       |
|------|------------|-------------|-------------|
| 1995 | $ 57,695   | $ 89,582    | $ 147,277   |
| 1996 | -          | 31,140      | 31,140      |
| 1997 | -          | 15,283      | 15,283      |
| 1998 | -          | -           | -           |
| 1999 | -          | 1,467,578   | 1,467,578   |
|      | $ 57,695   | $1,603,583  | 1,661,278   |

COWDERY, ECKER & MURPHY, L.L.C.

The Honorable Janet C. Hall
February 9, 2006
Page 10

and their relationship with the taxing authorities, and represent them before various Government agencies. These professional fees amount to at least $500,000.[10]

In sum, as a direct and proximate result of the criminal conduct to which Schwartz has now pled guilty, the Landeggers suffered damages at a minimum of $2,161,278, and as much as $5,462,877 (as of January 15, 2006) if they are not successful in their pending tax protest.[11]

### IV.     Legal Basis for Restitution Claim

Section 3663A of Title 18 provides that when a defendant is convicted of an offense "that is an offense against property under [Title 18] . . . including any offense committed by fraud or deceit . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss[,]" then "the court shall order . . . that the defendant make restitution to the victim of the offense[.]" 18 U.S.C. §§ 3663A(a)(1), 3663A(c). The statute defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered[.]" 18 U.S.C. § 3663A(a)(2).[12] Whether a particular person or entity qualifies as a "victim" is a question of law. *See United States v. Osorio*, 58 Fed. Appx. 875, 876 (2d Cir. 2003) (unpublished opinion).

As an initial matter, based on the facts set forth above there is no question that the Landeggers were victims of Schwartz's crimes. He willfully and knowingly concealed and covered up material facts through trick and scheme, claiming that the Landeggers tax returns for

---

[10] The Landeggers will submit a detailed analysis supporting these professional fees upon request.

[11] Of course, these damages are only a fraction of the total damages that the Landeggers have incurred as a result of Schwartz's misconduct; they, and P&W, have suffered enormous additional losses that are not directly related to the conduct to which Schwartz pled guilty and for which the Landeggers therefore do not seek recovery in this proceeding.

[12] It is submitted that the Landeggers are entitled to restitution under section 3663A of Title 18, the mandatory restitution statute. However, should the Court conclude that section 3663A is not applicable, we urge the Court to exercise its discretion and impose restitution pursuant to section 3663 of Title 18. "Under 18 U.S.C. § 3663(a)(1)(A), the district court has authority to order restitution for, inter alia, any violation of Title 18, which includes . . . 18 U.S.C. § 1001(a)(1) & (2)." *Osorio*, 58 Fed. Appx. at 876; *see also United States v. Elias*, 269 F.3d 1003, 1021-22 (9th Cir. 2001) ("1001 offenses may support the imposition of restitution"). The Court may order that the defendant pay restitution to any "victim" of the offense. *See* 18 U.S.C. § 3663(a)(1)(A). Section 3663(a)(2) defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."

1995 through 1999 had been prepared and filed timely when he knew that this was false; in an effort to maintain his lies, he engaged in additional misconduct and told more lies. As a result, the Landeggers have incurred enormous penalties, interest, and professional fees. In fact, the Landeggers' status as victims is so clear that following a three year investigation of the Landeggers during which Mr. Landegger was interviewed numerous times, the United States Attorney's Office for the District of Connecticut discontinued its criminal investigation of Mr. Landegger, concluding that he is a victim of Schwartz's criminal conduct: "[B]ecause it appears from the available evidence that [George] Landegger is more of a victim of criminal conduct perpetrated by Schwartz, rather than a culpable co-conspirator in the matter, the U.S. Attorney's Office for the District of Connecticut recommends detargetting Landegger, discontinuing the grand jury investigation as to him, and utilizing Landegger as a cooperating witness while continuing to pursue the matter as to Schwartz."[13] *See* 9/20/04 Letter from Assistant United States Attorney Stephen B. Reynolds to Attorney Scott Lawson of the Department of Justice Tax Division, attached as Ex. A.

Moreover, Schwartz's violation of section 1001 of Title 18 supports a mandatory restitution order pursuant to section 3663A in favor of the Landeggers. *See United States v. Andrews*, 88 Fed. Appx. 903, 907 (6th Cir. 2004) (unpublished opinion). In *Andrews*, the defendant pled guilty to violating section 1001 in connection with false payroll forms that he submitted to the United States Department of Housing and Urban Development in connection with a Government construction contract. The forms stated that Andrews was paying his employees approximately $21 per hour, when, in fact, he was paying them between $7 and $10 dollars per hour. The district court ordered the defendant to pay restitution to the employees who were underpaid as a result of the false statements. The Court of Appeals for the Sixth Circuit affirmed the restitution order, holding that an order of restitution was mandatory pursuant to section 3663A, and, as is the case here, "[t]here is no doubt that [the defendant]'s illegal activities resulted in a financial loss to his employees." *See id.*

Similarly, there is no doubt that Schwartz's illegal activities resulted in financial loss to the Landeggers and that these losses were directly and proximately caused by Schwartz's misconduct. *See supra*, Part III. The lies that Schwartz told that gave rise to Count I were part and parcel of his scheme to conceal from the Landeggers the fact that he had misdirected their tax payments to pay penalties and interest for prior years that they had unknowingly incurred as a

---

[13] Schwartz's plea agreement with the Government provides that restitution "is not at issue in this case." *See* 1/3/06 Plea Agreement Letter at 2. It is assumed that in stating that restitution is not an issue, the Government was indicating that no restitution is due to the Government. In any event, Schwartz was thoroughly advised by Magistrate Judge Fitzsimmons that the plea agreement is not binding on the Court or third-party victims. *See* Tr. at 29 ("Judge Hall's not a party to this letter or to any discussions that occurred between [Schwartz] and the government, or between [Schwartz's] counsel and government counsel. She's not bound by this plea agreement, by the stipulation of facts . . .").

COWDERY, ECKER & MURPHY, L.L.C.

The Honorable Janet C. Hall
February 9, 2006
Page 12

result of his misconduct. Thus, there can be no doubt that Schwartz's misconduct caused the Landeggers to sustain losses in the form of penalties and interest, and incur professional fees, in the amount of $2,161,278 at a minimum. But for Schwartz's willful and knowing falsification and concealment by trick and scheme, and his constant stream of misinformation directed at both the Government and the Landeggers, they would not have lost millions of dollars.

V.     **Conclusion**

For the foregoing reasons, the Landeggers submit that they are entitled to restitution from Arthur Schwartz in connection with Count I in the amount of $2,161,278, plus any loss arising from the proposed $3,301,599 assessment (as of January 15, 2006) currently under appeal.

Respectfully submitted,

COWDERY, ECKER, & MURPHY, L.L.C.

By: _____
       Thomas J. Murphy

MORVILLO, ABRAMOWITZ, GRAND,
IASON & SILBERBERG, P.C.

By: _____ /TJM
       John J. Tigue, Jr.

Cc:   Mr. Ray Lopez, Senior United States Probation Officer
      Eric J. Glover, Esq., Assistant United States Attorney
      James A. Bruton III, Esq.
      H. James Pickerstein, Esq.



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Brien McMahon Federal Building*  
*915 Lafayette Boulevard, Room 309*  
*Bridgeport, Connecticut 06604*

(203) 696-3000  
Fax (203) 579-5575  
www.usdoj.gov/usao/ct

September 20, 2004

Scott Lawson, Esq.
Tax Division Attorney
United States Department of Justice
Tax Division
Northern Criminal Enforcement Section
P. O. Box 972, Ben Franklin Station
Washington, D.C. 20044

    Re: <u>Grand Jury Investigation</u>
       Schwartz Investigation, et al.
       District of Connecticut
       D.J. No. 5-14-6932
       Concerning: Arthur Schwartz
             George Landegger

Dear Attorney Lawson:

  For the reasons set forth in greater detail in the enclosed memorandum, the United States Attorney's Office for the District of Connecticut hereby requests that the Tax Division formally detarget George Landegger in the above-referenced grand jury investigation.

  After further investigation of this matter, including several interviews; review of documentary evidence; several proffer sessions with George Landegger and his attorneys; and an attorney proffer session with Arthur Schwartz's attorney (Jim Bruton of Covington & Burling); the United States Attorney's Office for the District of Connecticut is terminating the grand jury investigation as to Landegger due to a lack of sufficient evidence implicating him in any tax crimes for the tax years 1995 through 1999. More specifically, because it appears from the available evidence that Landegger is more of a victim of criminal conduct perpetrated by Schwartz, rather than a culpable co-conspirator in the matter, the U.S. Attorney's Office for the District of Connecticut recommends detargetting Landegger, discontinuing the grand jury investigation as to him, and utilizing Landegger as a cooperating witness while continuing to pursue the matter as to Schwartz. To that end, Landegger has expressed his willingness to cooperate in the investigation into the preparation of fraudulent tax returns by Arthur Schwartz and Schwartz's related attempts to impede the administration of the Internal Revenue Laws. Landegger is also willing and available to testify if need be.

*Scott Lawson, Esq.*
*Tax Division Attorney*
*September 20, 2004*
*Page Two*

At the request of defense counsel and out of an abundance of caution, the United States Attorney's Office for the District of Connecticut has issued a letter of immunity to George Landegger, which is coextensive with 18 U.S.C. §6001. That letter has now been executed by the parties involved and a copy is enclosed for your reference.

As mentioned in my recent email, due to certain resource allocation issues, this matter is being reassigned to another Assistant within our office. I will let you know as soon as I learn the identity of the AUSA to whom the file is being transferred. Please feel free to call me at (203) 696-3023, however, if you have any questions or concerns regarding this matter – whether in the meantime, or at any point in the future. Thank you again for your assistance.

                                        Very truly yours,

                                        KEVIN J. O'CONNOR
                                        UNITED STATES ATTORNEY

                                        STEPHEN B. REYNOLDS
                                        ASSISTANT UNITED STATES ATTORNEY

enclosures

cc:    Thomas J. Murphy, Esq. (via fax w/o enclosures)