### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| United States | : | |
| | : | |
| v. | : | Case No. 3:06cr2 (JBA) |
| | : | |
| Arthur L. Schwartz | : | |

### RULING DECLINING RESTITUTION

On January 4, 2006, defendant Arthur L. Schwartz pled guilty to an Information charging him with two counts of false statements in violation of 18 U.S.C. § 1001 for statements he made to agents and officers of the IRS in connection with the federal income tax returns of George Landegger – the CEO of the company for which he worked, Parsons & Whittemore, Inc. ("P&W") – (Count I), as well as his own personal income tax returns (Count II).  George Landegger and his wife Eva have petitioned the Court, via letter, for an order of restitution in connection with Schwartz's sentence for Count I to compensate them for tax penalties and interest they claimed they sustained, and will sustain, as a result of Schwartz's Count I conduct.  Defendant objects to any such order of restitution, contending that the Landeggers are not "victims" under the restitution statutes because any losses claimed by the Landeggers were not directly and proximately caused by his offense conduct.  For the reasons that follow, the Court declines to order any restitution.

1

I.    **Factual Background**

Count I of the Information provides that from March 1999 through January 2001, defendant told IRS agents and officers "who were conducting an audit and examination relating to P&W and [George Landegger], respectively, that [George Landegger's] individual federal income tax returns, Forms 1040, for the tax years 1996 through 1999 had been filed with the IRS, when in truth and in fact, as defendant . . . knew, [George Landegger's] tax returns had not been filed with the IRS."  Information [Doc. # 1] ¶ 5.  The Stipulated Offense Conduct also provides that in March 1999 and again in April 2000-January 2001, Schwartz falsely represented to an IRS agent that the Landegger returns at issue had been filed when in fact he knew that was not the case.

The Landeggers now claim that "[a]s a result of the lies that Schwartz told the IRS agents and officers, the Landeggers incurred significant tax penalties and enormous interest, as well as potentially millions of dollars of additional penalties and interest."  2/9/06 Letter [Doc. # 23] at 2.  The Landeggers further contend that the IRS and the Department of Justice "undertook a three-year criminal investigation of Mr. Landegger" and as a result "[t]he Landeggers were forced to retain attorneys and forensic accountants, at significant expense, to represent them before the Government agencies and to sift through the chaos that Schwartz caused with respect to their tax filings and

payments." Id.   The Landeggers thus argue that "as a direct and
proximate result of the criminal conduct to which Schwartz has
now pled guilty, the Landeggers suffered damages at a minimum of
$2,161,278 and as much as $5,462,877 . . . if they are not
successful in their pending tax protest." Id. at 9-10 (including
calculations).[1]   The Landeggers also claim that "if Schwartz had
not lied to the IRS from 1999 through 2001, the penalties and
interest assessed against the Landeggers would have been reduced
by approximately 88%." 3/9 Letter [Doc. # 25] at 5.   The
Landeggers thus seek an order of restitution compensating them
for these losses on the basis that they are "victims" under 18
U.S.C. § 3663A and § 3663.

Prior to seeking restitution from defendant in this case, in
2003, the Landeggers (along with P&W and P&W's corporate parent
Parsons & Whittemore Enterprises Corp.) instituted a civil action
against Schwartz in the Southern District of New York, asserting
claims of fraud, breach of fiduciary duty, conversion,
negligence, and malpractice.   On September 6, 2005, the Honorable
Stephen C. Robinson denied the Landeggers' motion for summary
judgment on their claims determining, inter alia, that genuine

_____

[1] In their May 11, 2006 submission, the Landeggers represent
that "Mr. Schwartz's Count One lies have already cost them
$1,467,578 in interest for tax year 1999.   In addition, they have
already been assessed, but are contesting, $2,917,130 in
penalties and penalty interest for tax years 1998 and 1999."
Supplemental Submission [Doc. # 22] at 4.

3

issues of material fact existed concerning the relationship between the Landeggers and Schwartz, and specifically whether Schwartz had a duty to file the Landeggers' tax returns and whether the Landeggers reasonably relied on Schwartz. See Parsons & Whittemore Enterprises Corp. v. Schwartz, 387 F. Supp. 2d 368 (S.D.N.Y. 2005).

## II.  Statutory Framework

18 U.S.C. § 3663(a) provides that the Court, when sentencing a defendant convicted under, inter alia, Title 18 "may order . . . that the defendant make restitution to any victim of such offense."  Section 3663(a)(2) defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."  Additionally, the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, provides for "[m]andatory restitution to victims of certain crimes."  Specifically, Section 3663A is applicable (in relevant part) to "an offense against property under this title . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii).  Like Section 3663, Section 3663A(a)(2) also defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."[2]

_____

[2] "Where Sections 3663 and 3663A do not differ in material ways in connection with the issues raised by this sentencing decision, the Court will rely on caselaw interpreting one as well

4

Sections 3663 and 3663A also both contain provisions giving the district court authority to decline to order restitution if determining entitlement to and amount of restitution would be unduly complicated or would otherwise overwhelm the sentencing process such that the need to provide restitution is outweighed by the burden on the sentencing process.  See 18 U.S.C. § 3663(a)(1)(B)(ii) ("To the extent that the court determines that complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order."); id. § 3663A(c)(3)(B) ("This section shall not apply . . . if the court finds, from facts on the record, that . . . determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.").[3]

as the other."  See United States v. Cummings, 189 F. Supp. 2d 67, 72 n.3 (S.D.N.Y. 2002).
    18 U.S.C. § 3771(e) also defines "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." Section 3771 provides that such victims have the right, inter alia, not to be excluded from and to be heard at public proceedings in the district court "involving release, plea, sentencing or any parole proceeding."  See 18 U.S.C. § 3771(a)(1)-(8).

    [3] Similarly, U.S.S.G. § 5E1.1(a)(1) and (b)(2) provide that "[i]n the case of an identifiable victim, the court shall –

The Landeggers contend that they are "victims" under the relevant statutes, that restitution is appropriate under Section 3663A because defendant's offense is "an offense against property . . . including any offense committed by fraud or deceit," or, alternatively, that restitution is appropriate under Section 3663, and that determination of the entitlement to and amount of restitution would not be unduly complicated.  Defendant contends that the Landeggers are not "victims" as they were not directly harmed by his conduct of conviction and, moreover, that his conviction under 18 U.S.C. § 1001 does not constitute "an offense against property" under Section 3663A.  He also argues that the Court should decline to order restitution because the determination of restitution issues would unduly complicate and/or prolong the sentencing proceeding.

## III. Discussion

A.   Whether the Landeggers are "Victims"

The statute to which defendant pled guilty, 18 U.S.C. § 1001, provides:

[W]hoever, in any matter within the jurisdiction of the

---

[e]nter a restitution order for the full amount of the victim's loss in the case of an identifiable victim of the offense, if such order is authorized under, [inter alia,] § 3663, or § 3663A," unless "the court finds, from facts on the record, that . . . determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."

6

executive, legislative, or judicial branch of the
Government of the United States, knowingly and
willfully--
(1) falsifies, conceals, or covers up by any trick,
scheme, or device a material fact;
(2) makes any materially false, fictitious, or
fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing
the same to contain any materially false, fictitious,
or fraudulent statement or entry;
shall be fined under this title, imprisoned not more
than 5 years or, if the offense involves international
or domestic terrorism (as defined in section 2331),
imprisoned not more than 8 years, or both.

Defendant contends that the Landeggers do not constitute
victims of his conduct of conviction as set out in the
Information and the Stipulated Offense Conduct.  Whether the
Landeggers constitute "victims" under the restitution statutes is
a question of law.  See United States v. Osorio, 58 Fed. Appx.
875 (2d Cir. 2003).  The Supreme Court has stated that
"[t]he language and structure of [these statutes] make plain
Congress' intent to authorize an award of restitution only for
the loss caused by the specific conduct that is the basis of the
offense of conviction."  Hughey v. United States, 495 U.S. 411,
413 (1990).

For example, in United States v. Grundhoefer, 916 F.2d 788,
794 (2d Cir. 1990), defendants had been convicted of conspiracy
to defraud the United States and theft concerning programs
receiving federal funds and the court considered the availability
of restitution for students who suffered student loan liability
or did not get student loan refunds allegedly as a result of the

7

conduct of conviction.  The Second Circuit held that restitution
paid to the students directly "would be wholly inappropriate"
because "[r]estitution is available only for the loss caused by
the specific conduct that is the basis of the conviction [and]
[t]he specific offense here is conspiracy to defraud the United
States and theft concerning programs receiving federal funds."
Id.  Thus, the court held that any restitution could only be made
to the United States Department of Education, the "victim" of the
offense conduct.

Here, defendant's conduct of conviction, as detailed in the
Information and Stipulated Offense Conduct, is lying to the IRS,
not to the Landeggers.  Thus, if anyone is the victim of this
conduct, it is the Government (although the Government stipulated
in the plea agreement that restitution is not applicable).  The
restitution statutes provide that a "victim" is someone "directly
and proximately" harmed by the conduct of conviction, and the
case law does not provide for restitution of the consequential
damages claimed here because such losses are too removed from the
conduct of conviction to constitute "direct" and "proximate"
losses.  Rather, these losses are similar to those claimed by the
students in Grundhoefer and ultimately found to be inappropriate
for restitution, as such losses are secondary to, and are not
directly caused by, the offense conduct.  Likewise, contingent or
consequential losses, such as lost corporate opportunities, or

accountant and attorney fees incurred in recovering a victim's loss, have not been found to constitute "direct" losses.[4]

By contrast, the restitution ordered in <u>Osorio</u> and <u>United States v. Andrews</u>, 88 Fed. Appx. 903 (6th Cir. 2004), cited by the Landeggers, can be considered "direct."  In <u>Osorio</u>, the defendant pled guilty to making false statements under 18 U.S.C. § 1001 for lying to the DEA "that he had collected only $18,000 on behalf of a drug dealer rather than the actual amount of $85,000."  58 Fed. Appx. at 875.  The Second Circuit affirmed the

---

[4] <u>See</u> <u>United States v. Rodrigues</u>, 229 F.3d 842, 845 & n.2 (9th Cir. 2000) (denying restitution for lost corporate opportunity where defendant misappropriated certain business opportunities, noting that the alleged victim "did not suffer a <u>direct</u> loss . . . [i]nstead, [it] suffered a contingent loss because although it had a tenable, expectancy interest in the ventures, [it] had not committed to investing in the projects," noting "[r]estitution is not available for consequential losses, . . . or other losses too remote from the offense of conviction . . . restitution under the VWPA is confined to direct losses"); <u>United States v. Schinnell</u>, 80 F.3d 1064, 1070-71 (5th Cir. 1996) (district court should not have ordered restitution for "expenses incurred by [alleged victim] for, as stated in the PSR, 'accounting fees and cost to reconstruct the bank statements for the time period that the defendant perpetrated this scheme, temporary employees hired by the company to reconstruct the monthly bank statements, and cost incurred by the company in borrowing funds to replace the stolen funds,'" noting, "the VWPA provides no authority for restitution of consequential damages involved in determining the amount of the loss or in recovering those funds"); <u>United States v. Diamond</u>, 969 F.2d 961, 968 (10th Cir. 1992) ("Expenses generated in recovering a victim's losses [including attorney's fees] generally are too far removed from the underlying criminal conduct to form the basis of a restitution order."); <u>United States v. Mullins</u>, 971 F.2d 1138, 1147 (4th Cir. 1992) ("We hold that an award of restitution under the VWPA cannot include consequential damages such as attorney's and investigators' fees expended to recover property.").

district court's order of restitution of the $67,000 that
defendant had pocketed to the Government as victim, reasoning
"[w]e find that the government was a victim because it was
'harmed as a result of' Osorio's false statement regarding how
much money he had received: If Osorio had told the truth, the
government would have received $85,000 rather than approximately
$18,000." Id.  In Andrews, the defendant also pled guilty to
false statements under Section 1001 for submitting false
certified payroll forms pursuant to HUD-funded government
contracts.  88 Fed. Appx. at 903, 904-05.  The forms contained
the name of each employee and his or her hourly wage, but
defendant admitted "that he had not paid the prevailing wage to
his employees," rather, "[i]n completing the certified payrolls,
[defendant's secretary] wrote that the employees were being paid
approximately $21.00 per hour [when] [t]he employees were,
however, receiving between $7.00 to $10.00 per hour," and
defendant pocketed the difference. Id.  The Sixth Circuit
affirmed the district court's order of restitution to defendant's
employees, reasoning "[t]here is no doubt that [defendant's]
illegal activities resulted in a financial loss to his
employees." Id. at 907.

     The losses claimed by the Landeggers here are more like the
losses suffered by the students in Grundhoefer, or the fees and
other expenses incurred by the purported victims in the

10

consequential damages cases (<u>see</u> <u>supra</u> note 4), than the direct
losses in <u>Osorio</u> and <u>Andrews</u>, because the Landeggers' losses did
not flow directly from defendant's false statements to the IRS.
The false statements made by the defendants in <u>Osorio</u> and <u>Andrews</u>
caused the economic losses to the victims which went directly to
the defendants – in <u>Osorio</u>, the Government recovered less drug
money than it was due, and in <u>Andrews</u> the employees were paid
lower wages than they were entitled.  Here, the penalties,
interest, and attorney and other fees incurred by the Landeggers
were at most secondary consequences to Schwartz's conduct of
conviction – which was lying to the <u>IRS</u>, not to the Landeggers.
The Landeggers' losses are simply too far removed from the false
statements for which Schwartz was convicted.[5]

This distinction between consequential losses and losses
"directly" and "proximately" caused by the conduct of conviction
is further illustrated by language in one of the Landeggers'
letters to the Court.  In their 3/9/06 letter, the Landeggers
contend, in arguing that they are victims of defendant's conduct
of conviction, that "the lies Schwartz told to various IRS
representatives were integral to his maintaining the fraud that
he had perpetrated on the Landeggers for years."  3/9/06 Letter

---

[5] <u>See</u>, <u>e.g.</u>, <u>Cummings</u>, 189 F. Supp. 2d at 75-78 (noting that
restitution will not be ordered for losses that are "too remote,
either factually or temporally, from the conduct forming the
basis of the offense").

11

at 5.  This acknowledgment lays bare the reality that the restitution the Landeggers seek does not flow directly from his false statements to the IRS representatives, but rather from defendant's purported fraud over a period of years, and including defendant's alleged failure to properly file the Landeggers' tax returns in the first place, which issues are the subject of the Landeggers' civil suit in the Southern District of New York.

Thus, because the Landeggers have not shown that they were "directly and proximately" harmed by defendant's conduct of conviction, they are not "victims" entitled to restitution under the statutes.

B.   Offense Against Property

Even if the Landeggers were deemed "victims" under the statutes, defendant's conduct would not bring him under the mandatory restitution statute because his offense is not within the scope of Section 3663A.  As noted above, Section 3663A applies to "an offense against property under [Title 18] . . . including any offense committed by fraud or deceit."  "The term 'offense against property' used in Section 3663A(c)(1) to describe the Title 18 offenses for which restitution is mandatory [means] an offense against 'tangible property,'" including a theft of money.  Cummings, 189 F. Supp. 2d at 74-75.  Here, unlike the offense conduct at issue in Andrews and Osorio, Schwartz's false statements to the IRS did not result in any

theft of Landeggers' property or money – indeed, unlike defendants in those cases, Schwartz did not obtain any property or money as a result of his lies.[6]

C.   The Complexity of Determining Restitution

Further, even if the Landeggers were considered "victims" under the statutes, both Section 3663A and Section 3663 authorize the Court to decline to order restitution if the issues are too complex and if they would overwhelm the sentencing proceeding. See 18 U.S.C. § 3663A(c)(3)(B); id. § 3663(a)(1)(B)(ii).  These provisions thus "call for a weighing of the burden of adjudicating the restitution issue against the desirability of immediate restitution – or otherwise stated, a weighing of the burden that would be imposed on the court by adjudicating restitution in the criminal case against the burden that would be imposed on the victim by leaving him or her to other available legal remedies." United States v. Kones, 77 F.3d 66, 69 (3d Cir. 1996).  "Nothing in the legislative history evidences an expectation that a sentencing judge would adjudicate, in the

---

[6]   The Landeggers argue that defendant's crime falls within the scope of Section 3663A because of the provision "including any offense committed by fraud or deceit."  However, the statute must be read as a whole, specifically providing coverage of "any offense against property . . . including any offense committed by fraud or deceit" – just because defendant has admitted to deceiving the IRS does not mean that his offense constituted "an offense against property."  Likewise, a fraud necessarily entails a scheme of deception to deprive a victim of a property right. Such an offense is not implicated by the crime to which defendant pled guilty.

course of the court's sentencing proceeding, all civil claims against a criminal defendant arising from conduct related to the offense. . . . The kind of case that Congress had in mind was one in which liability is clear from the information provided by the government and the defendant and all the sentencing court has to do is calculate damages." Id.

The Landeggers contend that the restitution issues are not unduly complicated and that the Court's hearing could be "very targeted" and "controlled by the Court to focus on the question of what would have happened differently had Mr. Schwartz told the truth to the IRS," and that "the calculation of the amount of harm to the Landeggers is a mathematical exercise that can be readily explained through the testimony of [their] forensic accountant." Supplemental Submission at 5-6. Notwithstanding the Landeggers' protestations, however, a determination of fault, causation, and amount of restitution in this case would clearly overwhelm an otherwise straightforward sentencing proceeding.

The statutes "counsel[] against construing the statute[s] in a way that would bring fault and causation issues before the sentencing court that cannot be resolved with the information otherwise generated in the course of the criminal proceedings on the indictment." Kones, 77 F.3d at 69. Here, the Court would be required to resolve many issues outside of the Information and Stipulated Offense Conduct, including whether the Landeggers were

14

aware of the lies told by defendant to the IRS, whether the IRS penalties and interest claimed by the Landeggers were proximately caused by defendant's misrepresentations to the IRS or whether there were other intervening factors, and the amount of restitution – which is demonstrably complex, as the Landeggers themselves have claimed different amounts in their various letters, and uncertain, because the Landeggers are currently protesting various penalties.  Assessment of IRS policy would have to be made to determine the likely outcome had defendant not made the misrepresentations for which he was convicted, and defendant would likely have to obtain his own forensic accountant to examine the claimed amount of losses flowing directly from these lies, as opposed to the other alleged fraudulent conduct.

Thus, this is not a case where "liability is clear . . . and all the sentencing court has to do is calculate damages."  Kones, 77 F.3d at 69; United States v. Eisen, cr-90-18, 1991 WL 180403, at *1 (E.D.N.Y. Sept. 3, 1991) ("Congress intended restitution to be tied to the loss caused by the offense of conviction. . . . Under ordinary concepts of causation, a victim cannot be compensated for moneys which it would have parted with in any event.").  Accordingly, because the determination of restitution issues is far from simple and would overwhelm the sentencing proceeding, and particularly in light of the fact that these issues are intertwined with the losses caused by defendant's

15

allegedly fraudulent and other wrongful conduct which have been in litigation for over three years, the Court would decline to consider restitution even if it determined that the Landeggers constituted "victims" under the statutes.  Cf. <u>United States v. C.R. Bard, Inc</u>., 848 F. Supp. 287, 292-93 (D. Mass. 1994) ("It would be very time-consuming and complicated to litigate in this criminal case [the issue of proximate causation].  Much more importantly, at the end of that process, the court could only award victims compensation for their medical expenses and lost earnings.  The court could not award damages for pain and suffering or punitive damages, which may be available in civil suits.  Accordingly, individual civil suits are a much more appropriate means of addressing restitution. . . .").

**IV.  Conclusion**

Thus, given the Court's determination that the Landeggers' losses were not directly caused by defendant's offense conduct and given the complexity of the issues and the likelihood they would overwhelm this otherwise relatively straightforward sentencing proceeding, the Court declines to order restitution, and leaves the Landeggers to recovering their losses in their civil proceeding.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge
**Dated at New Haven, Connecticut this 25th day of May, 2006.**

16